T.C. Memo. 2006-116

UNITED STATES TAX COURT

WILLIAM E. JOHNSON, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 20357-04.                    Filed June 6, 2006.

William E. Johnson, pro se.

<u>Mary A. Waters</u>, for respondent.


MEMORANDUM OPINION

WELLS, <u>Judge</u>:  Respondent determined a $1,110 deficiency in income tax for petitioner's taxable year 2002.  The issue we must decide is whether certain expenses claimed by petitioner are deductible as alimony under sections 71 and 215.  Unless otherwise indicated, all section references are to the Internal Revenue Code, as amended.

## Background

At the time of filing the petition in the instant case, petitioner resided in Chesapeake, Virginia. Petitioner and his former spouse were under an order pendente lite of the Circuit Court of the City of Chesapeake, Virginia (divorce court), from February 2, 2000, until the final divorce decree was issued on March 22, 2002. The order pendente lite provided, inter alia, as follows:

> 2. That William Edmund Johnson, the defendant, [petitioner] shall pay the sum of $250.00 to the plaintiff [his former spouse], commencing February 1, 2000, and continuing in a like sum on the first and fifteenth of each month thereafter, as temporary child support, the total sum being $500.00 per month.
>
> *       *       *       *       *       *       *
>
> 4. That the defendant shall have exclusive possession of the marital premises * * * during the pendency of this cause and the defendant shall be responsible for all mortgage payments due on said premises during the pendency of this cause.
>
> 5. That plaintiff and defendant be and each hereby are restrained from selling, conveying, transferring, mortgaging or otherwise disposing of any of their property without further order of this Court in order that said property may be forthcoming to meet any decree which the court may enter herein.

The order pendente lite further ordered: "Temporary spousal support is reserved", and that "Defendant shall continue existing medical insurance coverage."

Pursuant to a divorce decree entered March 22, 2002 (divorce decree), petitioner was ordered to pay $360 per month in child

support and to maintain medical insurance for the minor children. The divorce decree did not order petitioner to maintain medical insurance for his former spouse. Pursuant to Virginia law, the divorce decree designated the marital residence, petitioner's Thrift Savings Plan, valued at $63,445.46,[1] and petitioner's Civil Service Retirement Plan as marital property and granted petitioner's former spouse a 50-percent interest in the marital property.

The divorce decree further ordered that $31,722.73 was to be transferred immediately from petitioner's Thrift Savings Plan into the sole name of petitioner's former spouse. Regarding petitioner's Civil Service Retirement Plan, the divorce decree ordered the following:

> 7. The plaintiff is hereby awarded fifty percent of the marital share of the defendant's [petitioner's] pension acquired through his employment with the United States Government, Civil Service, Department of the Navy. The plaintiff [sic] share of retirement shall be calculated using a fraction where the numerator shall be 22.5, representing the number of years of the marriage, and the denominator shall be the total number of years during which creditable retirement benefits were acquired by the defendant, times fifty percent.

Petitioner timely filed a tax return for his taxable year 2002, characterizing on that return $6,724 as deductible alimony

---

[1]The Thrift Savings Plan had a gross value of $88,487.21, less $10,902.22 (borrowed from the plan to pay off the mortgage on the marital residence), less $14,139.53 (borrowed from the plan to pay off the mortgage on other marital property), for a net value of $63,445.46.

expenses.  In a letter dated January 30, 2004, respondent informed petitioner that respondent was examining petitioner's 2002 tax return and requested that petitioner provide additional documentation to support the claimed $6,724 alimony deduction. During February 2004, petitioner sent respondent a letter in which he stated that the following payments were deductible alimony expenses:

| Payment to | Amount |
| --- | --- |
| Thrift Savings Plan | $3,868.42 |
| Government Pension Plan | $1,977.93 |
| Medical Insurance | $933.53 |
| Homeowner's Insurance | $344.00 |
| | $7,123.88[1] |

[1]We note that this amount is greater than the $6,724 deduction claimed by petitioner on his 2002 tax return.  This inconsistency is of no consequence because we find, for reasons stated below, that petitioner is not entitled to deduct any of the claimed expenses as alimony.

On August 6, 2004, respondent sent petitioner a notice of deficiency disallowing petitioner's $6,724 alimony deduction, resulting in a $1,110 deficiency for taxable year 2002. Respondent did not determine any additions to tax or penalties. Petitioner timely petitioned this Court.

## Discussion

Whether a payment is characterized as a property settlement or alimony determines whether such payment is deductible by the

payor spouse.  Payments representing a division of marital property are not deductible by the payor spouse and are not includable in income by the payee spouse.  See sec. 1041.  On the other hand, individuals are allowed a deduction equal to alimony or separate maintenance payments made during the taxable year.  Sec. 215(a).  Alimony or separate maintenance payments are defined in section 71(b) and must be included in the gross income of the recipient under section 71.  Sec. 215(b).  An alimony or separate maintenance payment is any payment in cash if:  (a) Such payment is received by, or on behalf of, a former spouse under a divorce or separation instrument;[2] (b) the divorce or separation instrument does not state that the payment is not includable in income under section 71 and not allowable as a deduction under section 215; (c) the payee and payor spouses are not members of the same household at the time of the payment; and (d) there is no liability to make any such payments after the death of the payee spouse and there is no liability to make any payment in cash or property, as a substitute for such payments, after the death of the payee spouse.  Sec. 71(b)(1)(A)-(D).  The test under section 71(b)(1) is conjunctive; a payment is deductible as

---

[2]A divorce or separation instrument means: (a) A decree of divorce or separate maintenance or any written instrument incident to such decree, (b) a written separation agreement, or (c) a decree (not described in (a)) requiring a spouse to make payments for the support or maintenance of the other spouse.  Sec. 71(b)(2)(A)-(C).

alimony only if all four requirements of section 71(b)(1) are present. See Jaffe v. Commissioner, T.C. Memo. 1999-196. Payments not made under a divorce or separation instrument may not be deducted by the payor spouse. See Taylor v. Commissioner, 55 T.C. 1134, 1138 (1971). We decide the instant case on the record without regard to the burden of proof or section 7491.

Petitioner contends that his payments to his thrift savings plan are deductible for the following reasons:

> From the divorce instrument, the Thrift Savings Plan (TSP) portion of petitioner's retirement was composed of a deferred compensation of $88,487.21 with a loan payoff debt of $25,041.75. The court allotted fifty percent interest [sic] in the deferred compensation plan to spouse/former spouse. Clearly this represents $44,243.60 of deferred compensation with $12,520.88 of loan payoff debt that are spouse/former spouse's interest.

> \*         \*         \*         \*         \*         \*

> When deferred compensation is withdrawn from a deferred compensation plan it is taxable income in the year it is withdrawn. * * * $44,243.60 being deferred compensation, when withdrawn must be reported on former spouse's tax return. $12,520.88 going to pay a loan would be considered a withdrawal of deferred compensation for income tax purposes. The divorce instrument does direct petitioner to pay off the loan portion. The petitioner is the only person eligible to payoff the debt according to TSP rules. Therefore transfer of the former spouse's portion of the loan is only accomplished through payments of the petitioner. The former spouse's debt is being paid off and these payments are a form of income to the former spouse. I.R.C. Section 71(b)(1) provides that "the term 'alimony or separate maintenance payment' means 'any payment' in cash if such payment is received by (or on behalf of) a spouse under a divorce or separation instrument." Were it not for the divorce instrument

> this circumstance would not occur. Note that I.R.C. Section 71(b)(1) provides nowhere therein that the payment actually be "required."

We understand petitioner to be contending that, even though the divorce court designated petitioner's Thrift Savings Plan as marital property and awarded petitioner's former spouse a 50-percent interest in the Thrift Savings Plan, petitioner is the only person who can pay off a loan against the plan pursuant to the Thrift Savings Plan rules,[3] and therefore, because petitioner is paying off his former spouse's 50-percent interest in the loan against the Thrift Savings Plan, that payment is deductible alimony.

Respondent contends that the interest in the Thrift Savings Plan allotted to petitioner's former spouse is merely a property settlement, not deductible alimony. We agree with respondent. The divorce decree stated that the Thrift Savings Plan was marital property and granted petitioner's former spouse a 50-percent interest. By repaying the loan, petitioner does not make alimony payments. Petitioner's former spouse received her share of the Thrift Savings Plan through an outright transfer. What remains in the plan is petitioner's and is burdened with the whole of the outstanding loans. As petitioner pays down these loans the net value of his share increases and inures to his

---

[3]Contrary to petitioner's assertions, we found no specific order in the divorce decree directing petitioner to pay off the loan against the Thrift Savings Plan.

benefit, not his former spouse's. Accordingly, we hold that petitioner's payments to his Thrift Savings Plan are not deductible alimony.

Similarly, petitioner contends that his contributions to his retirement plan are deductible alimony payments. Petitioner contends that, because he must contribute to his retirement plan, and because creditable benefits continue to accrue after the marriage, he essentially is being forced to make alimony payments. Petitioner further contends that the formula set forth in the divorce decree is incorrect because it does not fix the number of years of creditable benefits and that wages are not property. Respondent argues that the interest in the retirement plan allotted to petitioner's former spouse is part of the property settlement. We agree with respondent.

Petitioner fails to understand the function of the formula set forth in the divorce decree. The divorce decree provides as follows:

> The plaintiff [sic] share of retirement shall be calculated using a fraction where the numerator shall be 22.5, representing the number of years of the marriage, and the denominator shall be the total number of years during which creditable retirement benefits were acquired by the defendant, times fifty percent.

The total number of years of creditable benefits (years of service) does not have to be fixed; that is the purpose of numerator, 22.5 years, the duration of the marriage. The numerator in the equation limits the percentage of the funds to

be paid to petitioner's former spouse when distributions are made from the plan in the future. The formula merely fixes the share of retirement funds that is to be allotted to petitioner's former spouse. Accordingly, we hold that petitioner's contributions to his Government retirement plan are not deductible alimony payments.

Additionally, petitioner contends that he may deduct medical insurance payments because the order pendente lite directed him to maintain medical coverage which was in effect during the entire taxable year 2002. Petitioner contends that he elected his coverage during the open enrollment period at the end of 2001 and that his election was effective for 2002. At trial, petitioner testified as follows regarding the manner in which he calculated the amount of the deduction for medical insurance:

> When I determined my taxes I went ahead and put in half
> of what I paid for medical insurance because I figured
> I am half, she's half. She also had custody of the
> children, so I looked at that as making the difference
> between family plan and single plan would have given me
> a bigger value, but at the time I didn't pay attention
> to the difference. I just took half, prorated it for
> the year. I put that in as alimony per the example in
> the IRS publication. I was under court order to
> provide the insurance.

Respondent contends that, while the order pendente lite ordered petitioner to maintain existing medical coverage, the order was superseded by the March 22, 2002, divorce decree which ordered petitioner to maintain medical insurance for the minor children but did not mention petitioner's former spouse.

Respondent further contends that petitioner could have purchased separate insurance for the children without violating the divorce decree and that it was petitioner's voluntary decision to continue existing coverage which included his former spouse.

We believe petitioner's testimony that he could not change his insurance coverage after he elected his 2002 plan during the open enrollment period in late 2001. The fact that he could not elect another plan, however, does not mean half of all the medical insurance payments made by petitioner during taxable year 2002 is deductible alimony. There still must be an order directing petitioner to make the payments. See Taylor v. Commissioner, supra at 1138 (stating alimony is confined to situations where there is a written agreement or court decree requiring certain payments to be made). The February 2, 2000, order pendente lite provided that the "Defendant shall continue existing medical insurance coverage." The March 20, 2002, divorce decree stated: "This decree supplants the provisions of all prior decrees or orders entered in this cause, and all obligations imposed thereby which are still executory are hereby discharged". The divorce decree did not order petitioner to maintain medical insurance for his former spouse. The divorce decree only stated: "Defendant shall maintain medical insurance for the use and benefit of the minor children of the parties." Accordingly, petitioner would be entitled to a deduction for only

medical insurance payments covering his former spouse made during the first 3 months of taxable year 2002; i.e., the period covered by the order pendente lite. Although we conclude that petitioner would be entitled to deduct a portion of his medical insurance payments made during the first 3 months of taxable year 2002 as alimony, petitioner did not produce any documentary evidence substantiating the amounts paid for his former spouse's medical insurance. Petitioner's testimony at trial regarding how he calculated his deduction for medical insurance was a rough estimate of what petitioner believed his deduction should be. Petitioner, however, did not substantiate the payments made on behalf of his former spouse. Accordingly, we hold that petitioner may not deduct the amounts he claimed for his former spouse's medical insurance.

Petitioner contends that he may deduct the homeowner's insurance payments because, under the order pendente lite, he was obligated to make all mortgage payments on the marital home that petitioner and his former spouse were each restrained from selling, conveying, mortgaging, or otherwise disposing of so that the property would be available to satisfy any decree the divorce court might later enter. In essence, petitioner argues that the order pendente lite's direction not to sell, mortgage, or dispose of any marital property is tantamount to an order to insure the marital home so that the home would remain available to satisfy

any later divorce decree.  Respondent contends that the language in the order pendente lite is not an express directive to make homeowner's insurance payments.  We agree with respondent.

A taxpayer may not deduct specific payments as alimony absent a divorce or separation instrument requiring such payments.  See <u>Taylor v. Commissioner</u>, <u>supra</u> at 1138.[4] Petitioner invites us to read a command into the order pendente lite that is not contained in the order.  While we agree that a prudent homeowner might purchase insurance to protect his residence, that does not automatically qualify the homeowner's insurance payments as deductible alimony expenses.  Because the order pendente lite did not expressly direct petitioner to make homeowner's insurance payments, we hold that petitioner may not deduct the payments as alimony.

Based on the foregoing, we hold that petitioner's payments to his Thrift Savings Plan, retirement plan, medical insurance carrier, and homeowner's insurance carrier were not deductible alimony expenses for taxable year 2002.  We have considered all

---

[4]We note that the regulations permit cash payments to a third party on behalf of the other spouse to qualify as alimony, provided such payments are "under the terms of the divorce or separation instrument".  Sec. 1.71-1T(b), Q&A-6, Temporary Income Tax Regs., 49 Fed. Reg. 34455 (Aug. 31, 1984).

of petitioner's contentions.  To the extent not addressed herein, those contentions are without merit or unnecessary to reach.

To reflect the foregoing,

<u>Decision will be entered for respondent</u>.